

# The Attorney General of Texas

July 20, 1978

JOHN L. HILL
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main. Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity
Affirmative Action Employer

Honorable William R. Pemberton
County Attorney, Bee County
Beeville, Texas

Opinion No. H-1212

Re: County auditor's responsibility for auditing CETA funds.

Dear Mr. Pemberton:

You inform us that Bee County participates in certain programs established and funded under the Comprehensive Employment and Training Act (CETA), 29 U.S.C. §§ 801 - 992. You ask whether the commissioners court may delegate its CETA programs and funds to the Bee Community Action Agency, permitting payroll disbursements to be made by that Agency. You also inquire about the responsibilities of the County Auditor with respect to CETA programs and funds delegated or subcontracted to the Bee Community Action Agency.

The Bee Community Action Agency was organized by the commissioners court as the community action agency for the county pursuant to the Economic Opportunity Act of 1964, 42 U.S.C. §§ 2701 - 2996l; see 42 U.S.C. § 2790(a). It is a nonprofit agency which receives funds directly from the Community Services Administration to finance certain poverty programs. 42 U.S.C. §§ 2790, 2795. See Attorney General Opinions M-714, M-605 (1970).

The county is a member of the Coastal Bend Consortium, which acts as a CETA prime sponsor. See Attorney General Opinion H-891 (1976). The agreement establishing the consortium provides that the city of Corpus Christi will administer the programs and funds, but that "nothing herein shall relieve the members of the Consortium of their ultimate responsibility for the use of funds." The agreement also provides that

> each party/member of this Consortium who contracts with the Consortium will be primarily responsible to the Consortium for any monies it receives by virtue of any contract entered into by said party/member. . . .

Bee County has in fact entered into a contract with the Consortium to receive CETA funds and the funds received thereunder are paid into the county treasury and disbursed by the county. The contract transferring CETA funds from the Coastal Bend Consortium to Bee County expressly states that the accounting system for the funds will be maintained by the county auditor.

The CETA funds which Bee County receives must be used for purposes authorized by federal law and set out in the Comprehensive Manpower Plan developed by the prime sponsor. 29 U.S.C. SS 815, 984(e); 29 C.F.R. S 95.31 (1976). Texas law further limits Bee County to participation in those CETA programs directed at assisting indigent persons. V.T.C.S. art. 2351, S 11; see Attorney General Opinion H-891 (1976). The commissioners court may contract with other persons and entities to perform services that the county is authorized to perform. Pritchard & Abbott v. McKenna, 350 S.W.2d 333 (Tex. 1961); Attorney General Opinions H-912, H-901, H-892 (1976); H-680 (1975); H-127, H-80 (1973); M-843 (1971). Federal law expressly indicates that the services and facilities of community action agencies may be used to carry out the purposes of CETA. 29 U.S.C. SS 815(a)(3)(B), 984(e). We believe the commissioners court may contract with the Bee County Community Action Agency to provide services that will carry out the purposes of the CETA grant.

However, the contracts with the prime sponsor do not permit the commissioners court to relinquish its responsibility to use CETA funds for authorized purposes only. Nor does Texas law permit the court to delegate its responsibility for county functions when it enlists the services of others in performing them. See Whelan v. State, 282 S.W.2d 378 (Tex. 1955); Attorney General Opinion H-80 (1973). Thus, any agreement by which the commissioners court enlists the services and facilities of the Community Action Agency should provide sufficient safeguards to ensure that the CETA funds will be spent for authorized purposes only. If sufficient safeguards are provided, we believe the court may pay the Agency in a lump sum for its services and allow the Agency to make payroll disbursements to individuals. We cannot comment on the adequacy of any particular agreement, since none has been presented us.

The contract itself makes the county auditor responsible for accounting for CETA funds. It requires the county to comply with federal circulars relating to the maintenance of records, books, and accounts. The county auditor should follow the federal requirements in the event they differ from usual county procedures. See Attorney General Opinion M-887 (1971); compare Attorney General Opinion H-777 (1976). The contract also provides that CETA funds be deposited in a special bank account and designates the county auditor as the person authorized to withdraw funds from it. Thus, while the CETA contract specifies certain accounting procedures for the funds, it does not relieve the county auditor of responsibility for them. On the contrary, it expressly identifies him as the person who will maintain

the accounting system and see that federal reporting and record keeping standards are met.

## SUMMARY

Bee County may spend CETA funds to contract with the Bee County Community Action Agency for services that will carry out the purposes of the Comprehensive Employment Training Act and the local Comprehensive Manpower Plan. The county is responsible for using the funds for authorized purposes only. The county auditor is responsible for accounting for CETA funds and should follow the procedures specified in the contract.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jsn